## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **ISMAEL CRESPO, as Next of Kin of Mauris Crespo, deceased,** | ) | **Case No. _____** |
| | ) | |
| *Plaintiff,* | ) | **JURY DEMANDED** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WHITE COUNTY, TENNESSE;** | ) | |
| | ) | |
| **STEVE PAGE, individually and in his official capacity;** | ) | |
| | ) | |
| **JACOB DUKE, individually and in his official capacity;** | ) | |
| | ) | |
| **KYLE MEYER, individually and in his official capacity;** | ) | |
| | ) | |
| *Defendants.* | ) | |

---

## COMPLAINT

---

**COMES NOW,** the Plaintiff, Ismael Crespo, on behalf of Mauris Crespo (deceased) by and through counsel, for cause of action against the defendants, both jointly and severally, and would respectfully state unto this Honorable Court as follows:

## <u>INTRODUCTION</u>

1. This cause of actions arises from an encounter between Mauris Crespo, the deceased, the White County Sheriff and two of his deputies, which lead to Mr. Crespo's untimely death.

2. Plaintiff brings this wrongful death action pursuant to 42 U.S.C. § 1983 for deprivation of civil rights secured by the Fourth and Fourteenth Amendment to the United States Constitution and various state law claims to recover all damages allowable under the law, including compensatory and punitive damages.

1

## JURISDICTION AND VENUE

3. Jurisdiction is founded upon 28 U.S.C. § 1331. This Court has Jurisdiction over Plaintiff's claims of violation of civil rights under 42 U.S.C. § 1983.

4. Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions, which give rise to this cause of action occurred within this district and within one year of the filing of this Complaint and this Honorable Court otherwise has jurisdiction.

5. Jurisdiction to the state law claims is proper. The Federal Court, pursuant to 28 U.S.C. § 1367(a), should assume supplemental jurisdiction over state law claims.

## PARTIES

6. Plaintiff, Ismael Crespo, is and adult citizen and resident of Davidson County, Tennessee and the brother of the decedent, Mauris Crespo,

7. At all times relevant, the decedent, Mauris Crespo, was an adult, male, African American citizen and resident of Davidson County, Tennessee.

8. Defendant White County, Tennessee ("White County") is a governmental entity organized under the laws of the State of Tennessee and is known as a county, which acts through its elected officials. Among its many functions, White County operates and maintains a law enforcement agency known as the White County Sheriff's Office ("WCSO"). White County is under a duty to run its policing activities in a lawful manner so as to preserve the peace of White County and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the constitutions and laws of the Unites States of America and the State of Tennessee. White County has established or delegated to

Defendant Steve Page, Sheriff of White County, the responsibility of establishing and implementing policies, practices, procedures, and customs, used by law enforcement officers employed by White County regarding the use of force. At all times material hereto, White County was acting under color of state law.

9. Defendant Steve Page, upon information and belief, is an adult, Caucasian, resident and citizen of White County, Tennessee. At all times material hereto, Defendant Page was the elected sheriff of White County, Tennessee and the chief policy maker for the WCSO and was acting by virtue as a law enforcement officer and chief policy maker of the WCSO under the color of state law. Defendant Page is also sued in his individual capacity.

10. Defendant Jacob Duke, upon information and belief, is an adult, Caucasian, resident and citizen of the State of Tennessee. At all times material hereto, Defendant Duke was a deputy sheriff of the WCSO and at all times relevant was acting by virtue of his position as a law enforcement officer and under the color of state law. Defendant Duke is also sued in his individual capacity.

11. Defendant Kyle Meyer, upon information and belief, is an adult Caucasian, resident and citizen of the State of Tennessee. At all times material hereto, Defendant Meyer was a deputy sheriff of the WCSO and at all times relevant was acting by virtue of his position as a law enforcement officers and under the color of state law. Defendant Meyer is also sued in his individual capacity.

**FACTS**

Plaintiff makes the following allegations based on the review of all available records and statements regarding the death of Mauris Crespo.

12. On the morning of December 27, 2018, Mauris Crespo was the passenger in a vehicle that was involved in a car wreck in Dekalb County, Tennessee on Highway 70[1], near the Sligo bridge.

13. The female driver lost control while negotiating a curve, overturned, and struck a rock embankment. The driver was ejected from the vehicle onto the roadway during the crash and was later air lifted to a hospital.

14. Mr. Crespo walked away from the scene of the accident.

15. Dekalb County 911 received a call regarding a black male on the roadway. Dekalb County Deputy Andrew Lawrence responded and drove down Highway 70 towards White County to locate the man reported in the 911 call.

16. Meanwhile, down the road in White County, Tennessee, White County 911 received a call from a concerned citizen reporting a man outside his home yelling for help. The dispatcher asked what kind of help the man needed, the caller stated he did not know. The dispatcher asked for a description. The caller stated it was a black man in a black sweatshirt and jeans.

17. The caller did not sound distressed or in fear of his safety. The caller did not report that the man was belligerent or violent or combative. The caller simply reported that there was a man yelling for help.

18. The White County 911 dispatcher called for deputies to respond to a report of a suspicious person, a black male.

19. Deputy Jacob Duke and Deputy Kyle Meyer of the White County Sheriff's Department were dispatched to the caller's location on Highway 70.

---

[1] Highway 70 is also known as Sparta Highway or Smithville Highway. Dekalb County Sheriff's Department refers to it in their reports as Sparta Highway. White County Sheriff's Office refers to it as Smithville Highway. For the sake of clarity, it will be referred to as Highway 70 throughout the complaint.

20. White County Sheriff Steve Page also responded to the area with his deputies.

21. The White County deputies and sheriff encountered Mr. Crespo on Highway 70 near Shiloh Church of God.

22. Mr. Crespo was standing beside a car that was pulled over. Mr. Crespo then started to casually walk down the side of the road.

23. Mr. Crespo was not fleeing. He was not running down the road. He was not behaving in an erratic or aggressive manner. He was not belligerent. He was not yelling or shouting.

24. Mr. Crespo stopped walking when Deputy Duke asked him to stop. After he stopped, Mr. Crespo looked at Sheriff Page and said, "Hey, I know you," in a friendly manner.

25. Sheriff Steve Page, upon exiting his vehicle and before saying anything, instantly orders Mr. Crespo to put his hands behind his back.

26. Mr. Crespo had not committed any violent acts. He was not behaving erratically or aggressively. He was not a danger to the deputies or the public.

27. Mr. Crespo was standing on the side of the road with his hands out in front of him. He did not have his hands concealed or in his pockets, nor did he reach for anything. Mr. Crespo was unarmed.

28. Sheriff Page immediately and unnecessarily escalated the situation resulting in the unreasonable and unlawful seizure of Mr. Crespo.

29. Deputy Duke told Mr. Crespo he was not under arrest; he was being detained. Mr. Crespo told Deputy Duke that he did not do anything to anyone and asked Deputy Duke why he was being handcuffed.

30. Deputy Meyer and Deputy Duke grabbed Mr. Crespo's hands and put them behind his back. Mr. Crespo instinctively pulled away and was then thrown into the ditch by Deputy Duke.

31. Mr. Crespo started yelling for help and stated, "I didn't do nothing to nobody, sir."

32. Mr. Crespo was face down in the ditch with both Deputy Duke and Deputy Meyer on top of Mr. Crespo's back. Mr. Crespo's hands were trapped underneath him.

33. Sheriff Page ordered the deputies to tase Mr. Crespo.

34. Deputy Meyer grabbed the taser off Deputy Duke's belt. He turned the taser to drive-stun and tased Mr. Crespo. Deputy Meyer did not warn Mr. Crespo that he was going to use a taser on him.

35. Mr. Crespo jerked and cried out in pain while being tased. Mr. Crespo continued to plead for help, telling the deputies that he didn't do anything to anyone, and asking why the deputies were doing that to him.

36. Deputy Meyer then placed the taser on Mr. Crespo's arm and deployed the taser a second time. Again Deputy Meyer did not warn Mr. Crespo that he was going to use a taser.

37. Mr. Crespo yelled out in pain and pleaded with the deputies not to do it again. He continued to yell for help and repeat that he did not do anything to anyone.

38. Deputy Meyer deployed the taser a third and fourth time.

39. White County Sheriff Steve Page observed and supervised the interaction between the deputies and Mr. Crespo from the roadside with no sense of urgency or concern.

40. Sheriff Page did not intervene.

41. Dekalb County Deputy Lawrence arrived on the scene and went over to the ditch where the two White County Deputies were on top of Mr. Crespo, who was face down in the ditch.

42. One of the White County deputies then drive-stunned Mr. Crespo with a taser again and Deputy Meyer applied mandibular pressure to Mr. Crespo. The deputies had at least one of Mr. Crespo's arm's in handcuffs during this time. Mr. Crespo was still face down in the ditch.

43. Once Mr. Crespo was handcuffed and sat upright, deputies began chit-chatting, laughing, and talking about their relatives.

44. The deputies were not in fear of their safety, nor were they concerned about Mr. Crespo fleeing.

45. The deputies were not concerned about Mr. Crespo's well-being, considering he was just tased multiple times.

46. While Mr. Crespo was handcuffed and sitting upright in the ditch, he was not belligerent. He was not threatening the officers.

47. Mr. Crespo was having a difficult time sitting upright on his own and continued to ask for help, yet his pleas continued to go unanswered.

48. Dekalb County Deputy Lawrence told Sheriff Page that Mr. Crespo had been in a car wreck involving an ejection that morning in Dekalb County.

49. No one asked Mr. Crespo if he had been in a car accident, nor did they ask if he had any injuries from the wreck or if he needed medical treatment.

50. EMS was told not to come to the scene to evaluate Mr. Crespo.

51. The deputies on the scene allege in their reports that they observed that Mr. Crespo was under the influence of some substance due to his slurred speech. However, none of the deputies nor the sheriff asked Mr. Crespo if he had been drinking or if he had taken any drugs.

52. While the deputies were standing around talking, Dekalb County Deputy Lawrence alleged that Mr. Crespo, whose hands were cuffed behind his back, grabbed the bottom of Deputy Lawrence's pant leg.

53. Dekalb County Deputy Lawrence told Mr. Crespo to let go. Then Deputy Meyer forcefully kneed Mr. Crespo multiple times without warning. Mr. Crespo was handcuffed behind his back and sitting on the ground in a ditch still pleading for help at the time he was kneed by Deputy Meyer.

54. Mr. Crespo was unable to stand up on his own after being kneed and tased multiple times.

55. The deputies dragged him out of the ditch and across the road to Deputy Meyer's patrol car.

56. Mr. Crespo was never told that he was under arrest or why he was being placed under arrest.

57. The deputies forcefully placed Mr. Crespo inside the patrol car on the driver side. Then Deputy Meyer went to the passenger side and pulled him across the backseat. Deputy Meyer shoved Mr. Crespo into the vehicle in a kneeling position with his hands behind his back and his shirt pulled up over his head and face before closing the door.

58. Mr. Crespo was not seat belted.

59. Mr. Crespo was left in the back of the patrol car, unable to see, with his shirt pulled over his head and around his neck.

60. Mr. Crespo lost his balance and fell backwards.

61. Unable to brace himself due to his hands being cuffed behind his back, Mr. Crespo violently struck his head on the passenger side door.

62. Mr. Crespo then began kicking on the window of the patrol car to get the attention of the deputies while he again pleaded for help.

63. Deputy Meyer went over to the patrol car and threatened to pepper spray a handcuffed Mr. Crespo if he continued kicking the windows.

64. Mr. Crespo immediately complied and did not make another move. He did not kick; he did not flail about. The only other words spoken quietly by Mr. Crespo were "Help" and "Please Lord."

65. Deputy Meyer got into the patrol car and drove approximately 11 minutes to the White County Justice Center. Deputy Meyer did not speak to Mr. Crespo or ask him any questions during the drive.

66. Mr. Crespo lay quietly, with his head against the passenger side door in the backseat of Deputy Meyer's patrol car and took his some of his last breaths.

67. When Deputy Meyer pulled into the sally port of the White County Justice Center, there were six to seven individuals standing around with a restraint chair.

68. When the back-passenger side door to the patrol car opened, Mr. Crespo's head flopped backwards out of the car.

69. Several of the individuals in the sally port stood there staring at Mr. Crespo, who was not moving, for several seconds before someone finally asked, "Is he even breathing?"

70. Mr. Crespo was then pulled from the back seat of the patrol car and CPR was administered while he was still handcuffed behind his back.

71. Deputies were unable to remove the handcuffs with a key. It took the deputies several minutes to locate bolt cutters to cut the chain on the handcuffs in order to get Mr. Crespo's hands out from behind his back.

72. Mr. Crespo was transported to St. Thomas Highlands Medical Center in Sparta, Tennessee where he was pulseless and pronounced dead.

73. When Dekalb County Deputy Lawrence returned to the car wreck scene in Dekalb County, Tennessee Highway Patrol Trooper Johnson stated that there were no warrants or citations for Mr. Crespo.

74. The autopsy report states the cause of death as acute combined drug intoxication.

75. The autopsy report also documents multiple contusions and abrasions to the head, torso and extremities.

76. Contusions and injuries documented in the autopsy include the following, among others: dark purple contusions around the neck; circumferential abrasions and dark purple contusions surrounding the left and right wrists; dark purple contusions on the left arm and contusions on the left hand; multiple dark contusions on the right arm and right hand; contusions to the groin; dark purple contusions to the left thigh and knee; contusions to the right upper forehead with a scalp hemorrhage beneath it; multiple scalp and temporalis muscle hemorrhages; and multiple contusions and abrasions to the upper back.

77. Just 88 minutes elapsed from the time the wreck in Dekalb County was reported until the time Mauris Crespo was pronounced dead at St. Thomas Highlands Medical Center in White County.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Civil Rights Pursuant to 42 U.S.C. § 1983
### Excessive Force

78. The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

79. The actions and inactions of the Defendants, which resulted in the injuries to Mauris Crespo, were done under color of state law and in a manner, which caused Mauris Crespo to suffer constitutional violations. Specifically, the Defendants operated to violate Mauris Crespo's right to not be subjected to unreasonable, unjustified, and excessive force as secured by the Fourth Amendment to the Constitution of the United States of America, incorporated to the states by the Fourteenth Amendment to the Constitution of the United States, and Mauris Crespo's right to be accorded equal protection under the laws as guaranteed to Mauris Crespo under the Fourteenth Amendment to the Constitution of the United States.

80. Defendants operated to violate Mauris Crespo's civil rights as protected by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

81. At the time of the events described herein, **Mauris Crespo** had a clearly established constitutional right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the objectively unreasonable use of excessive force.

82. Each Defendant was aware at the time of this incident that **Mauris Crespo** had a clearly established constitutional right to be free from the objectively unreasonable use of excessive force as described above.

83. All of the individual Defendants in this matter were personally involved in the constitutional violations, and while acting in a supervisory capacity, Defendant failed to remedy a continuing and egregious wrong.

84. Defendant Page is responsible for the excessive force alleged herein in that he authorized, approved, and/or knowingly acquiesced in the use of excessive force.

85. Defendant Page explicitly ordered Defendants Duke and Meyer to tase Mr. Crespo.

86. In giving the order to tase Mr. Crespo, Defendant Page acted under color of state law and in violation of Mr. Crespo's right to be free from excessive force under the Fourth and Fourteenth Amendments, which was clearly established at the time.

87. Defendant Page has a duty to properly supervise his employees and not to order the use of excessive force.

88. Defendant Meyer violated Mr. Crespo's right to be free from excessive force by using an amount of force not reasonably necessary because Mr. Crespo did not pose a threat of serious physical harm at the time the force was used. Further, at the time the force was used, Mr. Crespo was not aggressive, belligerent, nor violent. Mr. Crespo was not fleeing. Mr. Crespo had not committed any violent crimes.

89. Defendant Meyer used excessive force when he tased Mr. Crespo multiple times, kneed Mr. Crespo, applied mandibular pressure to Mr. Crespo, and shoved Mr. Crespo in the back of the patrol car.

90. Defendant Duke violated Mr. Crespo's right to be free from excessive force by using an amount of force not reasonably necessary because Mr. Crespo did not pose a threat of serious physical harm at the time the force was used. Further, at the time the force was

used, Mr. Crespo was not aggressive, belligerent, nor violent. Mr. Crespo was not fleeing. Mr. Crespo had not committed any violent crimes.

91. The defendants knew or should have known based on their taser training that the drive-stun mode is painful, does not cause incapacitation, and that the use of repeated drive-stuns should be avoided. However, Defendant Meyer repeatedly applied the taser in drive-stun mode to Mr. Crespo and Defendants Duke and Page did not intervene to prevent the repeated painful drive-stun application to Mr. Crespo.

92. The force used by the individual defendants was not in a good faith effort to maintain or restore discipline in circumstances under haste, under pressure, and without the luxury of a second chance.

93. The conduct of the defendants in this matter was intentional, reckless, deliberate, wanton sadistic, malicious, unnecessary, and unprofessional and was indicative of their total deliberate indifference to Mauris Crespo's health and well-being, unnecessary pain and suffering, and deprivation of his constitutional rights.

94. As a direct and proximate result of the unlawful conduct of the defendants in violating Mauris Crespo's constitutional rights, Plaintiff suffered general and special damages and is entitled to relief under 42 U.S.C. § 1983.

95. The conduct of the defendants was intentional, willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## COUNT II
### Violations of Civil Rights Pursuant to 42 U.S.C. § 1983
### Deliberate Indifference

96. The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

97. The actions and inactions of the defendants which resulted in damages to Mauris Crespo were done under color of state law and in a manner which caused Mr. Crespo to suffer constitutional violations. Specifically, the defendants operated to defeat Mr. Crespo's Fourteenth Amendment right to be free from deliberate indifference to Mr. Crespo's serious medical needs. The defendants failed to provide medical attention in a timely manner, and this amounts to deliberate indifference.

98. The actions and inactions of the Defendants violated Mauris Crespo's civil rights as protected by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

99. Defendants Page, Duke, and Meyer were aware that Mr. Crespo was involved in a car accident involving an ejection. Dekalb County Deputy Andrew Lawrence advised them of that information at the scene.

100. Defendants Page, Duke, and Meyer were aware that Mr. Crespo had been tased multiple times and may require medical treatment.

101. Defendants Page, Duke, and Meyer were aware that Mr. Crespo's speech was slurred and suspected he may be under the influence of something.

102. Defendants knew or should have known based on their taser training that individuals suffering from drug intoxication or who are over-exhausted from a physical

struggle are more susceptible to the effects of a taser application and are more at risk for serious injury or sudden death.

103.    Defendants were aware of the WCSO Use of Force Policy which states that individuals "who require a protracted physical encounter with multiple deputies to be brought under control may be at an increased risk of sudden death.  Calls involving these persons should be considered *medical emergencies*."

104.    Despite Mr. Crespo's encounter with multiple deputies and being tased multiple times, Defendants did not provide immediate medical treatment for Mr. Crespo.

105.    Mr. Crespo continuously pleaded for help, but help was never offered.  Further, defendants never asked Mr. Crespo why he needed help.

106.    After EMS had been dispatched to the scene, Defendant Page told EMS to turn around and go the White County Justice Center to wait on them.

107.    The defendants' deliberate indifference to Mr. Crespo's serious medical needs caused a delay in treatment that resulted in Mr. Crespo's untimely death.

108.    The conduct of the defendants was intentional, willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

109.    Plaintiff is entitled to damages for Mauris Crespo's suffering, harm, and losses caused by the deliberate indifference and unlawful conduct of the defendants.

15

## COUNT III
## Failure to Intervene

110.     The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

111.     During the events described above, one or more of the defendants stood by without intervening to prevent other defendants from violating Plaintiff's constitutional rights.

112.     As a result of the defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered  and is entitled to relief under 42 U.S.C. § 1983.

113.     Defendants had a duty and a reasonable opportunity to prevent this harm, but failed to do so.

114.     Defendants' conduct in failing to intervene to prevent the violation of Plaintiff's constitutional rights was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

115.     The conduct of the defendants was intentional, willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## COUNT V
## MUNICIPAL AND SUPERVISORY LIABILITY

116.     The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

117.    White County and Sheriff Steve Page are under a constitutional duty to properly train, supervise, and discipline members of the WCSO to ensure that the policing activities of the WCSO are run in a lawful manner, preserving to the citizens of White County the rights, privileges, and immunities guaranteed to them by the Constitutions and laws of the United States of America and the State of Tennessee

118.    White County and Defendant Page failed in this constitutional duty by permitting, encouraging, tolerating, and knowingly acquiescing to an official pattern, practice or custom of its law enforcement officers, including the individual defendant officers, violating the constitutional rights of the public at large, including Mauris Crespo.

119.    The actions of the individual defendants complained of herein were unjustified, unreasonable, unconstitutional, excessive, and grossly disproportionate to the actions of Mauris Crespo, and constituted an unreasonable seizure effectuated through the use of excessive and unreasonable force and a deprivation of Mauris Crespo's due process protections in violation of the rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

120.    White County and Defendant Page are directly liable for the violation of Mauris Crespo's constitutional rights due to the following policies, practices or customs, which were in effect at the time of this incident and which were the moving force behind the violation of Mauris Crespo's constitutional rights:

   a.  Defendants failed to adequately and properly train and educate its officers with respect to the proper procedures to employ when interacting with citizens who might be intoxicated or mentally impaired, the proper use of force, and providing medical attention, creating an atmosphere of illegal and unconstitutional behavior that is tolerated and accepted in deliberate indifference and reckless disregard to the welfare of the public at large, including Mauris Crespo.

b. Defendants failed to properly supervise and discipline its officers with respect to violations of the laws of the State of Tennessee, the Constitution of the United States, and its own policies regarding the use of force, and providing medical attention, which creates a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned and accepted in deliberate indifference and reckless disregard to the public at large, including Mauris Crespo.

c. Defendants failed to adequately monitor and evaluate the performance of its officers and their compliance with the laws and policies, practices and customs with respect to the use of force, and providing medical attention, which creates a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned and accepted in deliberate indifference and reckless disregard to the public at large, including Mauris Crespo;

d. Defendants failed to adequately respond to and investigate complaints regarding officer misconduct by the citizenry, including, but not limited to, complaints regarding the use of force, and providing medical attention, in an effort to escape liability, thus creating a policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is ratified, condoned or approved, in deliberate indifference and reckless disregard to the rights of the public at large, including Mauris Crespo;

e. Defendants have a policy, practice or custom of exonerating officers regarding complaints of misconduct, including, but not limited to, the use of force, and providing medical attention, in order to escape liability and creating an atmosphere where illegal and unconstitutional behavior is condoned, tolerated, or approved, in deliberate indifference and reckless disregard to the rights of the public at large, including Mauris Crespo;

f. Defendants have a policy, practice or custom of allowing its officers to use excessive and/or unreasonable force without fear of discipline creating an atmosphere where such behavior is accepted, approved and ratified, in reckless disregard and deliberate indifference to the welfare of the public at large, including Mauris Crespo;

g. Defendants are aware that a "code of silence" exists among members of its department whereby officers will not report misconduct of fellow officers and has failed to take such steps to preclude its existence and, as a result of the "code of silence," officers act unconstitutionally without fear of discipline.

121. Defendants Duke and Meyer did not receive any training or in-service in the year prior the incident involving Mr. Crespo.

122. Defendants Duke and Meyer received taser training and certification in 2015.

Although their certificates state "(t)his certification must be renewed annually", Defendants Duke and Meyer did not complete taser certification again until January 2019, after Mr. Crespo's death.

123.    Defendants did not follow the WCSO Use of Force Policy.

124.    Defendant Meyer has a history of verbal and written warnings for violating White County Sheriff's Office policies and procedures.

125.    Alternatively, White County and Defendant Page are liable for the actions of the individual defendants by virtue of the fact that they were informed of improper conduct of the individual defendants and failed to discipline them, which evidences that the conduct of the individual defendants at the time of the events described herein was in conformity with the existing policies, practices and customs of White County. Accordingly, these Defendants ratified, condoned, and approved the individual defendant officers' conduct in this matter in all respects.

126.    Alternatively, White County and Defendant Page are liable for the constitutional violations committed by the individual defendants under the doctrines of agency, vicarious liability, employer-employee relations, master-servant, respondeat superior, joint venture, contract and as a result of their non-delegable duty to provide officers who comply with the constitution and laws of the United States and the State of Tennessee.

127.    As a direct and proximate result of the foregoing policies, practices and customs of White County and Defendant Page, the violation of the constitutional rights of citizens by the members of the WCSO and the individual defendant officers was substantially certain to occur and was the moving force behind the violation of Mauris Crespo's constitutional rights. As a result, Mr. Crespo suffered injuries and damages.

## COUNT VI
## STATE LAW CLAIMS
### Wrongful Death

128.     Plaintiff re-alleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference make said paragraphs a part hereof as if fully set forth herein.

129.     At all times hereto, the individual defendants were acting in the course and scope of their employment with White County, Tennessee and the White County Sheriff's Office.

130.     The acts, omissions and conduct of the individual defendants alleged herein constitutes assault, battery, false arrest, false imprisonment, and negligence under the laws of the State of Tennessee.

131.     The individual Defendants and White County should be held jointly and severally liable for all said torts, as the individual defendants were acting in the course and scope of their employment at all times material hereto and their actions were foreseeable.

132.     In the alternative, Plaintiff submits that White County is liable for all torts committed by its officers, that White County has waived immunity under state law, and that the individual defendants are liable for all torts committed by them for which White County has not waived immunity.

133.     The individual defendants are liable for all torts committed by them and for which White County has not waived immunity under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §20-20-101, et seq.  ("TGTLA") and which include, but are not limited to, assault, battery, and false arrest.

134.    White County is liable for their own negligence and are responsible for the aforesaid torts committed by  the individual defendants for which they have waived immunity under the TGTLA and which include negligence and false imprisonment.

135.    Plaintiff brings this cause of action under state law against White County for negligence pursuant to the TGTLA, Tenn. Code Ann. §20-20-101, et seq.  White County has waived its immunity for its own negligence and the acts and omissions of its employees complained of herein pursuant to the TGTLA.  At all times material hereto, White County's employees, including the individual defendants, were acting in the course and scope of their employment.

136.    White County was under a duty to conduct their law enforcement activities in such a manner as to preserve to the citizens of White County, Tennessee, the rights, privileges and immunities guaranteed to them by the laws of the State of Tennessee, the Constitution of the State of Tennessee and the Constitution of the United States.

137.    While the Plaintiffs have asserted that the policies, practices, customs and usages of White County were deliberately indifferent to Plaintiffs' constitutional rights, the Plaintiffs plead in the alternative that White County negligently screened, hired, trained, monitored, supervised, controlled, assigned, counseled, investigated and disciplined the Individual Defendants and other officers and employees of their respective departments, which made the misconduct of the Individual Defendants and other officers a foreseeable result of the White County systemic deficiencies.

138.    The aforementioned deficiencies of White County resulted in their failure to act in a reasonable and prudent manner and constitute negligence under the laws of the State of Tennessee that was a proximate cause of the torts committed by the Individual

Defendants.

139.     As a direct and proximate result of the aforementioned acts and omissions of the Defendants, the Mr. Crespo has been injured and damaged.

## COUNT VIII
## T.C.A. § 8-8-302 et. seq.

140.     The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

141.     In addition to the theories of liability against White County previously set forth herein, Plaintiff avers that White County is directly liable for all wrongs, injuries, damages, and expenses incurred and sustained pursuant to T.C.A. § 8-8-302 et. seq. as at all times material hereto the individual defendants were acting by virtue of and under color of their offices as deputies employed by White County and the White County Sheriff's Office.

## DAMAGES

142.     The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

143.     As a direct and proximate result of the aforementioned acts and/or omissions of the Defendants, the Plaintiff is entitled to recover damages.

144.     The injuries and damages for which the Plaintiff seeks compensation from Defendants, both jointly and severally, under both state and federal law, include, but are not limited to the following:

   a.   The pecuniary value of the life of Mauris Crespo

b. Physical, mental, and emotional pain and suffering of Mauris Crespo prior to his death;

c. Compensatory damages;

d. punitive damages against the applicable defendants as allowed by the law in an amount to be determined by a jury;

e. Pre- and post-judgment interest;

f. All costs, including statutory and discretionary costs;

g. Attorney fees, expert fees, and discretionary costs as authorized by 42 U.S.C. § 1988 and state law.

145. Plaintiff reserves the right to prove the amount of damages at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays as follows:

1. That proper process issue to Defendants and that they be required to answer under oath in the time required by law;

2. That judgment be rendered in favor of Plaintiff and against the Defendants, both jointly and severally, on all causes of action asserted herein;

3. That declaratory judgment be rendered that the acts and conduct complained of herein were unconstitutional;

4. That Plaintiff be awarded those damages to which he may appear that he is entitled by proof submitted in this case;

5. That punitive damages be awarded against the applicable defendants as allowed by the law in an amount to be determined by a jury;

6. That Plaintiff be awarded reasonable expenses, including attorney fees, expert fees and costs as authorized by 42 U.S.C. § 1988 and state law;

7. That Plaintiff receives any such other, further, and general relief as this Honorable Court deems just and proper.

8. That a jury of six (6) be impaneled to try any and all issues in this case.

**CONSTITUTIONALLY SUBMITTED,** this the 23 day of December 2019,

**ISMAEL CRESPO** *Plaintiff*

s/ Richard M. Brooks

By: **RICHARD M. BROOKS, #4308**
*ATTORNEY FOR PLAINTIFF*
130 Third Avenue West
Carthage, TN 37030
Phone: (615) 735-0807
Fax: (615) 735-1921
Email: utkrmb@comcast.net